INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE
AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,
UAW-TECHNICAL, OFFICE, PROFESSIONAL DEPARTMENT v
CITY OF STERLING HEIGHTS

Docket No. 102338. Submitted August 16, 1988, at Detroit. Decided
   March 21, 1989. Leave to appeal applied for.

   The International Union, United Automobile, Aerospace and
   Agricultural Implement Workers of America, UAW-Technical
   Office, Professional Department filed an unfair labor practice
   charge on behalf of Robert Gulley against the City of Sterling
   Heights, alleging that Gulley was not reappointed because of
   his participation in lawful organizational activity under the
   public employment relations act. The Employment Relations
   Commission ordered Gulley reinstated and reimbursed for lost
   wages. The city appealed, alleging that Gulley is not entitled to
   protection under PERA since he was an executive employee.

   The Court of Appeals *held:*

   1. The public employment relations act applies to supervisors
   and executives employed in public service.

   2. The MERC decision was supported by competent, material
   and substantial evidence on the whole record.

   Affirmed.

1. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — SUPER-
   VISORS — EXECUTIVES.

   The public employment relations act applies to supervisors and
   executives employed in public service (MCL 423.202; MSA
   17.455[2]).

2. LABOR RELATIONS — APPEAL — EMPLOYMENT RELATIONS COMMIS-
   SION — CONSTITUTIONAL LAW — PUBLIC EMPLOYMENT RELA-
   TIONS ACT.

   The Court of Appeals reviews decisions of the Michigan Employ-
   ment Relations Commission by determining whether the deci-
   sion is authorized by law and whether the commission's find-

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 921-925, 1759-1763.
Labor relations acts: discharge of employee as reprisal or retalia-
   tion for union organizational activities. 83 ALR2d 535.

ings are supported by competent, material, and substantial evidence on the whole record (Const 1963, art 6, § 28; MCL 423.216[e]; MSA 17.455[16][e]).

3. LABOR RELATIONS — EMPLOYMENT RELATIONS COMMISSION — AP-
    PEAL — BURDEN OF PROOF — ANTIUNION ANIMUS.

The standard of proof which the Michigan Employment Relations Commission should use when reviewing a claim that an employee's discharge was motivated by antiunion animus is that the burden is on the party making the claim to demonstrate that protected conduct was a motivating or substantial factor in the employer's decision to discharge the employee; once this showing is established, the burden then shifts to the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct; the employer's burden is one of going forward to meet the prima facie case established by the employee and not a burden of persuasion on the ultimate issue of the existence or nonexistence of a violation; if the employer, by credible evidence, balances the employee's prima facie case, the employer's burden of proof is met and the duty of producing further evidence shifts back to the employee.

*Jordan Rossen,* General Counsel, and *Nancy Schiffer,* Associate General Counsel, for petitioner.

*Riley & Roumell* (by *Stanley C. Moore, III,* and *Amy E. Newberg*), for respondent.

Before: DOCTOROFF, P.J., and WAHLS and T. L. BROWN,* JJ.

PER CURIAM. Respondent City of Sterling Heights (Sterling Heights) appeals as of right from an order of the Michigan Employment Relations Commission directing Sterling Heights to restore Robert Gulley to the position of finance director and reimburse him for all wages lost as a result of his termination in violation of § 10(1)(c) of the public employment relations act, MCL 423.210(1)(c); MSA 17.455(10)(1)(c), which prohibits

---

* Circuit judge, sitting on the Court of Appeals by assignment.

discrimination in hiring, terms, or other conditions of employment in order to encourage or discourage membership in a labor organization. We affirm.

Gulley was appointed finance director for Sterling Heights in January, 1976. On June 16, 1986, while on extended sick leave, Gulley was notified of his nonreappointment. The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW-Technical Office, Professional Department filed an unfair labor practice charge on behalf of Gulley against Sterling Heights, alleging that Gulley was not reappointed because of his participation in lawful organizational activity under MCL 423.209; MSA 17.455(9).

In July, 1985, Gulley engaged in organizing activity among administrative employees. The UAW was eventually elected as bargaining representative for residual supervisory city employees. Sterling Heights challenged the inclusion of certain positions in the residual supervisory bargaining unit, including the position of finance director. In *UAW v Sterling Heights,* 163 Mich App 8, 14; 413 NW2d 716 (1987), this Court held that the finance director, an executive employee, should be excluded from the residual supervisory bargaining unit.

In this appeal, Sterling Heights argues that the PERA does not protect executive employees and, therefore, this Court's prior finding that the position of finance director is executive mandates reversal of the MERC decision and dismissal of the unfair labor practice charge arising out of Gulley's non-reappointment. We disagree.

The definition of public employee contained in the PERA does *not* exclude a supervisor or an executive. MCL 423.202; MSA 17.455(2) defines "public employee":

No person holding a position by appointment or employment in the government of the state of Michigan, or in the government of any 1 or more of the political subdivisions thereof, or in the public school service, or in any public or special district, or in the service of any authority, commission, or board, or in any other branch of the public service, hereinafter called a "public employee," shall strike.

Our finding that Gulley was an executive and, therefore, should have been excluded from the residual supervisory bargaining unit did not strip Gulley of the protections afforded by the PERA. See *Hillsdale Community Schools v Labor Mediation Bd,* 24 Mich App 36; 179 NW2d 661 (1970), lv den 384 Mich 779 (1970); *Dearborn School Dist v Labor Mediation Bd,* 22 Mich App 222; 177 NW2d 196 (1970). As explained in *Detroit Bd of Ed v Local 28, Organization of School Administrators & Supervisors, AFL-CIO,* 106 Mich App 438, 443, n 2; 308 NW2d 247 (1981), lv den 413 Mich 859 (1982):

Under the definition contained in MCL 423.2(e); MSA 17.454(2)(e), the term "employee" does not include "any individual employed as an executive or supervisor." However, we note that this definition does not apply to public employees, which have been statutorily designated in MCL 723.202; MSA 17.455(2). Thus, since the definition of 'public employee' includes all persons in the service of the state (including executives or supervisors), the rights granted in MCL 423.209; MSA 17.455(9) apply to all such employees. The statute provides:

"It shall be lawful for public employees to organize together or to form, join or assist in labor organizations, to engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection, or to negotiate or bargain collectively with their public employers through representatives of their own free choice."

The executive exclusion, as applied to public employees, is thus based upon the Commission's power to delineate appropriate bargaining units. As noted in *Dearborn School Dist v Labor Mediation Board,* 22 Mich App 222, 228; 177 NW2d 196 (1970), MCL 423.9(e); MSA 17.454(10.4) "does not prohibit those employees engaged in executive or supervisory positions from organizing, but only that they shall not be included in a bargaining unit containing nonsupervisory employees in the same plant or business enterprise."

Sterling Heights points out that the MERC has declined to follow *Detroit Bd of Ed, supra,* construing the statement quoted as dicta. Instead, the MERC has analogized to federal cases construing the National Labor Relations Act. The NLRA, however, specifically excludes "supervisors" from its definition of "employee," 29 USC 152(3), as does the act governing labor relations between the federal government and federal government employees, 5 USC 7103(a)(2). In contrast to the federal statutes and in contrast to the definition of employee contained in MCL 423.2(e); MSA 17.454(2)(e), the definition of public employee under PERA does not contain an exclusion for executive or supervisory employees. The statutory language compels a conclusion that the Legislature did not intend to except executive and supervisory employees from the PERA coverage.

We hold that Gulley was a public employee under MCL 423.202; MSA 17.455(2) entitled to participation in lawful organizational activity under MCL 423.209; MSA 17.455(9), without interference or restraint or coercion by Sterling Heights, MCL 423.210(1)(a); MSA 17.455(10)(1)(a), and entitled to be free from discrimination in regard to hiring, terms, or other conditions of employment in order to encourage or discourage membership in

a labor organization, MCL 423.210(1)(c); MSA 17.455(10)(1)(c).

Sterling Heights also challenges the MERC's determination that the decision not to reappoint Gulley was discriminatory under MCL 423.210(1)(c); MSA 17.455(10)(1)(c). When reviewing a MERC decision, this Court determines whether the decision is authorized by law and whether the commission's findings are supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 423.216(e); MSA 17.455(16)(e); *MESPA v Evart Public Schools,* 125 Mich App 71, 73; 336 NW2d 235 (1983), lv den 417 Mich 1100.32 (1983).

In evaluating the UAW's claim that Sterling Heights' decision not to reappoint Gulley was motivated by antiunion animus in violation of MCL 423.210(1)(c); MSA 14.455(10)(1)(c), the MERC applied the standard of proof adopted by this Court in *Evart Public Schools, supra,* p 74.

> [W]here it is alleged that a discharge is motivated by antiunion animus the burden is on the party making the claim to demonstrate that protected conduct was a motivating or substantial factor in the decision of the employer to discharge the employee. Once this showing is established, the burden then shifts to the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct. The burden of the employer is one of going forward to meet the prima facie case established by the employee. It is not a burden of persuasion on the ultimate issue of the existence or nonexistence of a violation. It is a balancing of the evidence. If the employer, by credible evidence, balances the employee's prima facie case, the employer's burden of proof is met and the duty of producing further evidence shifts back to the employee. The burden of the employer referred to is a burden of

production of evidence to meet the prima facie case of the employee. If the burden of the employer is met, the burden is then once again on the employee.[1]

Accord, *Schoolcraft College Ass'n of Office Personnel v Schoolcraft Community College,* 156 Mich App 754, 763; 401 NW2d 915 (1986), lv den 428 Mich 895 (1987). See *MERC v Reeths-Puffer School Dist,* 391 Mich 253, 260; 215 NW2d 672 (1974).

The MERC very thoroughly reviewed the evidence presented at the hearing before the hearing officer. The evidence showed that the unionization of Sterling Heights administrative employees was a highly-charged issue within the city, that Gulley was a vocal supporter of unionization, that during council discussions concerning the consequences of unionization a council member vowed to "get Mr. Gulley" for organizing, and that this council member subsequently became mayor and held that position when the decision was made not to reappoint Gulley. While evidence was also presented concerning deficiencies in Gulley's performance, a fact recognized by the MERC in its decision, the commission concluded:

[W]e believe that the evidence as a whole supports a finding that Gulley would not have been terminated in June, 1986 but for his union activities. As the record shows, City Manager Ives had only a little over three weeks in which to evaluate Gulley's abilities before Gulley left on sick leave. Less than two weeks after coming on board (two days of which were taken up by a MERC hearing),

---

[1] The burden of proof standard adopted in *Evart Public Schools, supra,* was derived from *NLRB v Wright Line, A Division of Wright Line, Inc,* 662 F2d 899 (CA 1, 1981), cert den 455 US 989; 102 S Ct 1612; 71 L Ed 2d 848 (1982), and approved by the United States Supreme Court in *NLRB v Transportation Management Corp,* 462 US 393; 103 S Ct 2469; 76 L Ed 2d 667 (1983).

Ives began keeping a separate file to record Gulley's deficiencies. Less than one week after starting his job, Ives was complaining to ex-Acting City Manager Schoenherr at the MERC hearing about Gulley's "attitude" problem. During two weeks following this hearing, Ives wrote memos to Gulley asking for information or giving instructions almost every day on which he (Ives) was in town. There is no indication that Ives focused such attention on any other department head, nor does the record clearly establish that the problems in the finance department were so acute on [sic-or?] Gulley's responsibility for these problems so great as to warrant this attention. As noted above, these events took place in the middle of a Charging Party organizing drive in which Gulley had played a prominent part and in the context of an explicit threat by Respondent's mayor to "get" Gulley for these activities. Having carefully weighed all of the evidence presented in this case, we conclude that the record supports a finding that Gulley's union activity was the "but for" cause of his termination as finance director of Respondent in June, 1986.

The MERC. decision is supported by competent, material, and substantial evidence on the whole record.

Affirmed.